VENABLE BROTHERS <em>v.</em> RILEY–GRANT COMPANY.

The law and the evidence submitted demanded the judgment which was rendered by the court without the intervention of a jury.

Argued January 15, — Decided February 9, 1903.

Complaint.   Before Judge Reid.   City court of Atlanta.   April 14, 1902.

*B. H. & C. D. Hill,* for plaintiffs in error.
*Rosser & Brandon,* contra.

FISH, J.   On October 28, 1896, Venable Brothers gave to Riley-Grant Company, a corporation, several promissory notes, due at different dates, and contemporaneously with the execution of these notes the parties entered into a written contract which recited: that Venable Brothers had employed Riley-Grant Company to secure for them a loan on certain real estate in the city of Atlanta, known as Temple Court and the Old Capitol Lot, and that said Riley-Grant Company did secure a loan of $100,000 from the Equi-

table Life Assurance Society on Temple Court, and of $30,000 on the Old Capitol Lot; that Venable Brothers have contended that the loan on the Old Capitol Lot was not made as provided in the contract, and that as to the loan on Temple Court there was not incorporated in the loan the privilege of payment at the end of three years, as provided by the contract made by them with Riley-Grant Company; and that by reason of this contention a dispute had originated between the parties as to the amount of commissions due the Riley-Grant Company for securing said loan; and in order to make an amicable settlement of the matter it was agreed as follows: " (a) In full of all commissions said Venable Brothers have executed and delivered to the Riley-Grant Company eight promissory notes for $250.00 each, dated this day, and due January 1, 1898, July 1, 1898, January 1, 1899, July 1, 1899, January 1, 1900, July 1, 1900, January 1, 1901, July 1, 1901. (b) It is distinctly understood and agreed that the last four notes above described shall not be paid, provided, at the end of three years from date of said loan on Temple Court, Venable Brothers shall secure the money elsewhere, and in good faith tender to the insurance company the amount of principal and interest due on Temple Court, and the same shall be accepted by said insurance company; or if said insurance company shall refuse and decline to accept the amount, in either event said Venable Brothers shall be relieved from the payment of said last four notes. (c) If said Venable Brothers do not, at the end of three years from the date of said loan, tender, as above set forth, to said insurance company, the amount of said loan on Temple Court, principal and interest, then said four notes shall be paid at the times they fall due, as above stated." The note falling due January 1, 1900, not being paid at maturity, Riley-Grant Company brought suit upon it against Venable Brothers. This note contained the following stipulation: " This note to be paid only under the conditions of a contract contemporaneous herewith between the parties." The defense set up was that the conditions referred to in such contract had been fully complied with, so far as the defendants were concerned, " and that by the terms of said contract the said note was not an existing obligation against them at the time said suit was filed, and long before said suit was filed." These general allegations in the defendants' answer were followed by others, to the effect that the defendants " did, at the end of

three years from the date of the loan referred to in said contract, tender to said insurance company in said contract mentioned the amount of the loan on Temple Court, principal and interest, as set out in said contract, which tender was made in the city of New York by these defendants, and was refused by the said insurance company," the tender being made by them, through their agent Jacob Haas, "in the city of New York, at the office of said insurance company, on June 15, 1899." By an amendment to their answer, the defendants alleged that when their agent, Haas, tendered the amount of principal and interest due on the debt to the insurance company, said company waived the actual production of the money and so stated to Haas, and further stated that it would not receive the money if it was produced and offered to it by him. Upon the trial, the case was, by agreement of the parties, tried by the court without the intervention of a jury, and a judgment was rendered in favor of the plaintiff for the amount sued for. The defendants filed a bill of exceptions, in which the only grounds of error assigned are the general ones, that the judgment was contrary to law and was contrary to the evidence.

Two questions are to be determined from the evidence and the law applicable thereto: first, whether a tender was made to the Equitable Life Assurance Society, as provided for in the contract; and second, if it was not, whether a waiver by that company of an actual tender would, under the contract, be equivalent to a tender. The answer to the first of these questions depends upon the testimony of Jacob Haas. He testified as follows: "Witness was employed in the month of June, 1899, by Venable Brothers, to secure for them a loan of $100,000 on the building known as Temple Court. In pursuance of said employment witness went to New York and made arrangements to secure the loan, and after securing the loan witness went to the office of the Equitable Life Insurance Company, New York City, and told Mr. Jordan, the comptroller, that the Venables had a loan coming due at the end of the month, that they had secured another loan, and were ready to pay it over to them. Mr. Jordan stated he was not going to receive the money, that the time was not up, and that there was no option to pay it. Witness said to Mr. Jordan that it would be a good deal of trouble to bring one hundred thousand dollars in cash, but

he was ready to do so and had the money.     Mr. Jordan replied: 'It is no use.   I am not going to take the money; it is not due, and I am not going to take it.'     Witness told him he had been em-- ployed by the Messrs. Venable, who wanted to take up the loan; but he said the contract did not provide for it, and there was no use to make the tender.     Witness thinks this conversation occurred on the 15th day of June, 1899.     Witness had a contract at that time to get the money any time he wanted it; he was to give notes and mortgages on Temple Court building, but the papers had not been prepared.     Mr. Dreyfus and Mr. Rosenthal of New York City had agreed positively and definitely to let him have the money. Mr. Dreyfus was perfectly familiar with the building offered as se- curity, and he and Mr. Rosenthal agreed to take the full amount of the loan. . . I had negotiated the loan with the parties men-- tioned, in good faith, and knew they were able to pay the money, and would pay it upon the approval of the title to the property and upon the execution of the notes and mortgages.     In the con- versation with Mr. Jordan, witness asked him if he would waive the actual delivery or tender of the money; he said he would waive it; that there was no use going to that trouble."

It seems almost superfluous to say that it is perfectly clear, from this testimony, that no actual tender of the money was made by Haas to the Equitable Life Assurance Society.     He did not have the money to tender, but only "had a contract at that time to get the money any time he wanted it," dependent "upon the approval of the title to the property;" and, in order to get it then, "he was to give notes and mortgages on Temple Court building, but the papers had not been prepared."

Besides, in order to meet the condition upon which the note was to become void, Venable Brothers had both to secure and tender the money.     Haas's testimony shows that it was neither secured nor tendered.     The word "secure," as used in the contract, means, "to get possession of; to make one's self secure of; to acquire certainly; as to secure an estate."     Webster's Dict.     It is apparent, from this testimony, that Venable Brothers had not secured the money.     They had not obtained possession of it, made themselves secure of it, or acquired it certainly.     Instead of having secured the money, they had simply secured a promise, under which, if the title to the prop- erty should be approved by the promissors, they could secure it.

The tender of the money being a condition upon which the respective rights of Riley-Grant Company and Venable Brothers depended, no one not authorized by Riley-Grant Company so to do had any authority or power whatever to waive it.   It may be that Riley-Grant Company was induced to enter into this contract by the belief that it would be very difficult, if not impossible, for Venable Brothers to secure this large amount of money and tender it to the Equitable Life Assurance Society while Temple Court and the Old Capitol Lot were incumbered by the heavy liens securing the loans made to them by that insurance company.   It might have been perfectly willing to risk the chance of Venable Brothers being able to do this, and not at all willing to agree that the note should be void if Venable Brothers should offer to procure the money and tender it to the insurance company and that company should, in advance of a tender, refuse to accept the money if tendered.   At any rate, the securing and tendering of the money was a condition of the contract, by the terms of which Riley-Grant Company agreed to be bound, and without its consent no condition of that contract could be waived.   The effect of the defense set up was that *the condition of the contract*, requiring a tender of the money, was waived by the insurance company.   As the insurance company was not a party to the contract, and had no authority from Riley-Grant Company to waive any of its conditions, it could not waive the tender which the contract called for.

*Judgment affirmed.   By five Justices.*